**INTERNATIONAL BROTHERHOOD OF PULP, SULPHITE, AND PAPER MILL WORKERS, AFL–CIO, Plaintiff,**

v.

**GREAT NORTHWEST FIBRE COMPANY, Defendant.**

**No. 2707.**

United States District Court
E. D. Washington, N. D.

Nov. 17, 1965.

Hugh Hafer, of Bassett, Donaldson & Hafer, Seattle, Wash., for plaintiff.

George J. Tichy, Spokane, Wash., for defendant.

## MEMO DECISION

POWELL, Chief Judge.

This action is to compel the defendant to recognize a collective bargaining agreement executed by plaintiff and defendant's vendor. The agreement was not signed by the defendant. The facts have been stipulated. This decision is on a partial trial under Rule 42(b) F.R.Civ. P., 28 U.S.C.A.

The facts are detailed in the pretrial order. They are briefly summarized here. Pacific Pulp Molding Company (Pacific Pulp) entered into a collective bargaining agreement with the plaintiff union. The contract was renewed annually, until the last one which was for two years commencing June 15, 1964. (Exhibit 1) That is the contract involved in this case.

In the spring of 1965 Pacific Pulp found itself in financial difficulties. It was required to sell its Wenatchee plant, which it did to defendant Great Northwest Fibre Company (Great Northwest). The sale was under a contract of sale which included the following provisions:

"8. Prior to the closing date, seller Pacific Pulp Molding Co. will * * * (g) shut down the seller's Wenatchee, Washington, plant and post and mail to employees notices of final termination of all employer-employee relationships at Wenatchee, it being understood that buyer is not assuming seller's employment contracts, union contracts, or other labor agreements, or any liability for accrued wages, bonuses, vacation pay, sick pay, pension or retirement benefits or other obligations to employees arising out of seller's operations prior to the closing date, and that buyer will make its own arrangements for the hiring of employees."

The Wenatchee plant was substantially the entire operation of Pacific Pulp in the State of Washington. It was the only place Pacific Pulp had employees represented by the plaintiff union. Pacific Pulp had manufactured a number of different types of articles from wood pulp. It had employed as many as 108 men at one time. At the time the plant closed there were 21 employees. Great Northwest took possession of the plant about April 26, 1965. It started employing men on May 3, 1965. A significant number of former employees of Pacific Pulp were employed by Great Northwest under new contracts of

employment. I find from the detailed evidence that defendant did in fact carry on substantially the same business as Pacific Pulp in the Wenatchee plant.

■ I must determine under John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898, and Wackenhut Corp. v. International Union etc., 332 F.2d 954 (9 Cir. 1964), if the defendant is a successor corporation to Pacific Pulp and bound by its collective bargaining agreement with the plaintiff. No one fact is of controlling significance. All must be taken together. To find that this Court has jurisdiction I must first find that the contract is one binding on the defendant as a successor corporation to Pacific Pulp. Only then will this Court have jurisdiction under 29 U.S. C.A. 185. So the solution of the main issue includes the solution of the question of jurisdiction.

On this subject no two cases are identical. The product manufactured by the defendant is so similar as to be considered for the purposes of this case, the same as the product manufactured by Pacific Pulp. The plant is the same plant operated by the predecessor. The method of operation is similar to that of Pacific Pulp although different suppliers and different sales outlets were used and different agencies marketed the finished product of Great Northwest. In *Wackenhut* no mention was made of the union contract in the contract of sale. Here there was a mention of it. It was specifically provided defendant here would not be bound by it. The parties had the union contract in mind. It was a unilateral attempt at termination. In *John Wiley & Sons* the successor organization was bigger than its predecessor and succeeded by merger. In the instant case there was no merger but a sale, and none of the owners of Pacific Pulp were included in defendant's corporate organization.

■ In 38 F.R.D. 84 the article, "The Emergent Role of District Courts in National Labor Policy" discusses a Federal common law in labor disputes that is arising and is controlling in actions between labor and management. As stated in *Wiley*, "Federal law, fashioned 'from the policy of our national labor laws,' controls." 376 U.S. 543, 548, 84 S.Ct. 909. Also at 550, 84 S.Ct. at 914, in a quote from United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 578–579, 80 S.Ct. 1347, 1351, 4 L.Ed.2d 1409, "The collective bargaining agreement states the rights and duties of the parties. It is more than a contract; it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate. * * The collective agreement covers the whole employment relationship. It calls into being a new common law—the common law of a particular industry or of a particular plant. * * *"

None of the cases give a yardstick to measure our fact situation to determine if the successor is bound by the predecessor's labor contract. At one end of the scale it would not be binding if the plant were sold in forced liquidation, dismantled and used for a purpose dissimilar to that of the seller. If the seller, not at forced sale, sold a plant and its use were continued for a somewhat similar purpose but with only a few employees, there might be no continuance of the labor contract. We may add parenthetically that any transaction in which it is expected the buyer may conduct the same business at the same location as his vendor, should include an additional party at the bargaining table, the employee representative. The gray area is not clarified by either *Wiley & Sons* or *Wackenhut* except as Judge Hamley says in the latter, 332 F.2d 954, 958, in holding the contract binding on the successor:

"This conclusion, we believe, is required by the recent decision of the Supreme Court in John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S. Ct. 909, 11 L.Ed.2d 898, rendered after the appeal was taken in the case before us. In that case it appeared that Interscience Publishers, Inc., after entering into a collective bargaining agreement, which included an arbitration

provision, merged with John Wiley & Sons, Inc., and ceased to do business as a separate entity. There was then a wholesale transfer of employees from Interscience to Wiley which engaged in the same business. The Supreme Court held that Wiley, as the successor employer, is bound by the preëxisting labor agreement and is obligated to arbitrate grievances presented by the union which is a party to that agreement.

"There are statements in the opinion of the Supreme Court in Wiley which, considered separately, might appear to indicate that the fact that the change of employers had been accomplished by a merger, rather than by a sale and purchase of assets as in our case, was a controlling factor in reaching the result indicated. Reading the opinion as a whole, however, we are convinced that the Supreme Court did not rest the decision in Wiley on that narrow ground, but upon a broader view dictated by the policy of the national labor laws.

"What the Supreme Court did in Wiley was to balance the rightful prerogative of owners independently to rearrange their businesses and even eliminate themselves as employers against the necessity of affording some protection to the employees covered by a collective bargaining agreement containing an arbitration clause, from a sudden change in the employment relationship. Having in view the objectives of national labor policy reflected in established principles of federal law, the court held the described interest of the employees outweighs that of the employer, and must prevail.

"The specific rule which we derive from Wiley is that where there is substantial similarity of operation and continuity of identity of the business enterprise before and after a change in ownership, a collective bargaining agreement containing an arbitration provision, entered into by the predecessor employer is binding upon the successor employer.

"In Wiley as in our case, the successor employer was substantially larger than the predecessor and there, as here, substantially all of the employees of the predecessor were accepted as employees of the successor. It follows that the observation made in Wiley, 376 U.S. at page 551, 84 S.Ct. at page 915, that

" ' * * * relevant similarity and continuity of operation across the change in ownership is adequately evidenced by the wholesale transfer of Interscience employees to the Wiley plant, apparently without difficulty,'

is equally applicable here. It follows that under the rule of Wiley, Wackenhut is bound by the collective bargaining agreement entered into by General Plant, and is bound thereunder to arbitrate the union grievances as ordered by the district court."

■■ Under the authorities I find that the contract is binding and this court does have jurisdiction. Findings and judgment may be prepared by the plaintiff. When findings and judgment are submitted defendant may wish to present further arguments. I have concluded that the provision of the pretrial order which authorizes the fixing of the amount of damages by this Court is not within its jurisdiction. Under Section 17 of Exhibit 1, the union contract, it is provided that on arbitration " * * * any decision concurred in by two of the three arbitrators shall be final and binding upon the parties concerned." Under the *Warrior & Gulf* and the *Enterprise Wheel* cases [1] arbitration is necessary and no damage award in this case would be in order. Since the contract is binding on the parties they are relegated to a determination of their respective rights as provided in the contract.

1. United Steelworkers of America, AFL-CIO v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409;

United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424.